UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY BARNO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>C. FRAZIER, et al.,<br><br>　　　　　Defendants. | Case No. 1:18-cv-01387-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 1)<br><br>TWENTY-ONE (21) DAY DEADLINE |

Rodney Barno ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on October 9, 2018. (ECF No. 1).

On May 2, 2019, the Court issued a screening order. (ECF No. 12). The Court found that Plaintiff failed to state a claim for violation of his due process rights because Plaintiff failed to allege that he suffered any adverse consequences from being found guilty of the Rules Violation Report ("RVR"). (Id. at 7).

The Court directed Plaintiff to either: 1) file an amended complaint; or 2) notify the Court in writing that he wants to stand on his current complaint, subject to this Court issuing findings and recommendations to the assigned district judge consistent with the screening order. (Id. at 9). After receiving two extensions of time (ECF Nos. 15 & 17), Plaintiff failed to respond to the screening order. However, as it appears that Plaintiff may have chosen to stand on his current complaint (ECF No. 16, p. 2), the Court issues these findings and

recommendations consistent with the screening order.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

///

///

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that on January 19, 2016, he was placed in the Administrative Segregation Unit ("ASU") because "confidential information" indicated "safety/enemy concerns." Plaintiff was "deemed a threat to the safety and security of the institution, staff and inmates."

After ASU staff labeled Plaintiff a "snitch" to other ASU inmates, they tried to house Plaintiff with an incompatible inmate in the cell Plaintiff was already housed in, despite Plaintiff's safety/enemy concerns, and without following procedures on inmate housing.

Plaintiff was charged with an RVR for willfully delaying a peace officer in the performance of duty by refusing to accept a compatible cellmate in violation of 15 CCR § 3005(c). However, Plaintiff did not violate 15 CCR § 3005(c), and the charge was false.

Defendant Williams classified the RVR, and knowingly allowed the false charges to proceed. He also failed to follow fair procedures on giving adequate notice of the charges against Plaintiff, specifically because Plaintiff never refused to be housed or assigned.

Defendant Smith was the chief disciplinary officer on Plaintiff's RVR, and on March 22, 2016, authorized the charges to remain, even though Plaintiff was completely denied procedural due process protections. Defendant Smith knew that defendant Williams denied Plaintiff documentary evidence and witnesses, and further permitted defendant Frazier to hear the matter and adjudicate guilt without fair procedures.

Defendant Tapia was the investigative employee assigned to assist Plaintiff. Defendant Tapia denied Plaintiff due process protections. He failed to interview witnesses for Plaintiff's defense. He waited for witnesses to transfer, making them unavailable for Plaintiff's investigation. Pursuant to regulations, he was supposed to pursue the witnesses even after they transferred, but he failed to do so. Additionally, instead of investigating and collecting evidence to help Plaintiff, he denied Plaintiff almost all his witnesses and evidence as "not relevant" because defendant Frazier advised him to, despite procedures that demand otherwise. Defendant Tapia was working with and for defendant Frazier, not for Plaintiff. Defendant Tapia also falsified documents to suggest Plaintiff did not request witnesses for the hearing,

and lied by claiming "I have interviewed all witnesses" and "gathered all pertinent information."

Defendant Frazier was the lieutenant and senior hearing officer at the RVR hearing on or about March 5, 2016. Defendant Frazier failed to follow his own procedures in connection with the RVR disciplinary process for ASU inmates. Defendant Frazier denied Plaintiff's requests for witnesses and documentary evidence thirty-one times as "not relevant." Defendant Frazier also interfered with Plaintiff's investigative employee by advising him to deny any and all requests as "not relevant," even though they were. Defendant Frazier concedes he failed to follow his own procedures by depriving Plaintiff of an opportunity to present evidence in his defense, which would have demonstrated Plaintiff's safety concerns and precluded a finding of guilt. Defendant Frazier also lied in his report dated March 5, 2016, noting that Plaintiff did not request any witnesses.

Additionally, defendant Frazier retaliated against Plaintiff for filing an appeal by illegally adding more punishment.[1] In doing so, defendant Frazier illegally altered documents, which he misdated.

Plaintiff alleges that he "was deprived fair procedures in a process for disciplinary hearings by all defendants that are guaranteed by the 14th Amendment to the U.S. Constitution, as created by state regulations and law."

### III. EVALUATION OF PLAINTIFF'S CLAIMS

  a. <u>Legal Standards for Violation of Due Process in Prison Disciplinary Hearings</u>

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. <u>Ingraham v. Wright</u>, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that

---

[1] Plaintiff did not bring a retaliation claim against defendant Frazier in this action. (<u>See</u> ECF No. 10, p. 3).

resulted in a punishment of thirty days in solitary confinement, provided the following guidance in determining when there is a deprivation of liberty interests such that procedural due process is required in the prison context:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life….
>
> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for " 'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.
>
> Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992). The decision to release a prisoner rests on a

5

> myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983). The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause. The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

Sandin v. Conner, 515 U.S. 472, 483-87 (1995) (footnotes omitted). Thus, in Sandin, the Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections. Regarding the issue of parole in particular, the Court found that the fact that charges could be used against the prisoner in his parole hearing was not a significant deprivation of his liberty interests because the charges did not inevitably affect his sentence, parole was based on a myriad of considerations, and the prisoner had a chance to explain the circumstances behind his record.

To the extent that plaintiffs are entitled to due process under the legal standards discussed above, prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. But the due process clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556–57, 571–72 n.19.

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v.

Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or ... to have adequate substitute aid ... from the staff or from a[n] ... inmate designated by the staff." Id. at 570.

Additionally, "some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached…." Id. at 455-56.

      b. Analysis of Due Process Claims

Plaintiff alleges that he was not allowed to present evidence in his defense at the RVR hearing, and that he was denied "fair procedures." However, Plaintiff does not allege what, if any, consequences he suffered as a result of being found guilty of the RVR. He also does not cite to any exhibits regarding consequences he suffered.[2]

As Plaintiff did not include any factual allegations related to the punishment he was subjected to as a result of being found guilty of the RVR, he has failed to sufficiently allege that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, the Court finds that Plaintiff failed to sufficiently allege a due process claim.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened the complaint and finds that it fails to state a claim under the relevant legal standards. As Plaintiff was already granted leave to amend but declined to do so, the Court finds that further leave to amend should not be granted.

---

[2] Plaintiff attached over sixty pages of exhibits to the complaint.

7

Accordingly, the Court HEREBY RECOMMENDS that:

1. This action be dismissed, with prejudice, for failure to state a claim; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 23, 2019**              /s/ Erica P. Grosjean
                                           UNITED STATES MAGISTRATE JUDGE